IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CAUSE NO. 1:18-CR-226-LY |
| | § | |
| UVALDO RAMIREZ-CORTINAS | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court in the above-styled and numbered cause are Defendant's Motion to Dismiss the Indictment filed September 11, 2018 (Dkt. No. 20), Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment filed November 2, 2018 (Dkt. No. 27), and Defendant's Reply to Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment filed November 21, 2018 (Dkt. No. 29). Also before the court are Defendant's Motion to Dismiss the Indictment on Independent Grounds due to Defective Notice to Appear filed October 19, 2018 (Dkt. No. 25), Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment filed November 2, 2018 (Dkt. No. 28), and Defendant's Reply to Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment under Pereira filed November 21, 2018 (Dkt. No. 30). On November 30, 2018, the court conducted a hearing at which all parties were represented by counsel. Having considered the motion, response, reply, attached exhibits, supplemental authority, applicable law, and the arguments of counsel, the court will dismiss the indictment for the reasons to follow.

I. **BACKGROUND**

On June 5, 2018, Ramirez-Cortinas was indicted on one count of illegal reentry into the United States. *See* 8 U.S.C. § 1326(a). Ramirez-Cortinas is a citizen of Mexico. He came to the United States in 1998, married a United States citizen, and has four children who are United States citizens. On March 29, 2004, Ramirez-Cortinas pleaded guilty to failure to stop and

render aid and was sentenced to five years imprisonment, probated for five years. In January 2009, while still serving the terms of his probation, the State of Texas indicted Ramirez-Cortinas on charges of child indecency and aggravated sexual assault of a child. The State moved to revoke his probation based on those charges. Ramirez-Cortinas pleaded not true to the alleged probation violations, and bonded out of state custody while the revocation proceeding was proceeding. On March 23, 2010, the state court found the probation violations true, revoked Ramirez-Cortinas's probation and sentenced him to five-years imprisonment. Ramirez-Cortinas did not turn himself into authorities, and he was additionally charged with bail jumping. *See* TEXAS PENAL CODE ANN. § 38.10. On August 18, 2011, Ramirez-Cortinas pleaded guilty to bail jumping and was sentenced to seven years imprisonment. The State dismissed all charges of indecency and sexual assault.

On July 25, 2012, Ramirez-Cortinas was served by mail with a United States Department of Homeland Security form titled "Notice to Appear." The form notice states that Ramirez-Cortinas is subject to removal because he is "an alien present in the United States who has not been admitted or paroled." The notice alleged, in part, that Ramirez-Cortinas was "convicted in the 413th District Court at Johnson County, Texas, for the offense of Bail Jumping, in violation of Texas Penal Code 38.10(f)" and "you were then sentenced to a term of imprisonment of 7 years." Based on these factual allegations, the notice charges Ramirez-Cortinas as removable because he is "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime of moral turpitude." The notice also charges Ramirez-Cortinas with being present in the United States without being admitted or paroled. The notice further states that he would "be advised by the immigration judge . . . of any relief from removal for which [he] may appear eligible including the privilege

of voluntary departure," and that he would have "a reasonable opportunity to make any such application to the immigration judge."

### 1. Immigration hearings

Ramirez-Cortinas participated in four hearings before an immigration judge. Removal proceedings commenced on October 15, 2012, when Ramirez-Cortinas appeared before an immigration judge with 13 other men for an "en masse" master calendar hearing. The immigration judge told the men "you have the right to introduce documents or other items into the record as evidence so the Court will consider them during the hearing, and to call witnesses to testify on your behalf." Ramirez-Cortinas requested and was granted a continuance. A second master calendar hearing was held on December 4, 2012. At this hearing, the immigration judge reviewed the charges contained within the notice and reiterated that Ramirez-Cortinas was removable because he was "in the country illegally" and "because you have been convicted of a "crime involving moral turpitude." The immigration judge also asked whether Ramirez-Cortinas feared for his safety if he returned to Mexico. Based on Ramirez-Cortinas's responses, the immigration judge provided him an application for asylum and granted a second continuance. On January 8, 2013, a third master calendar hearing took place, and Ramirez-Cortinas requested another continuance to obtain counsel. The immigration judge scheduled a hearing on Ramirez-Cortinas's asylum application for March 12, 2013.

On March 12, 2013, the merits hearing commenced, and Ramirez-Cortinas sought the following forms of discretionary relief from removal: asylum, withholding of removal, and voluntary departure. The immigration judge concluded that Ramirez-Cortinas was not eligible for asylum, withholding of removal, or voluntary departure because of his bail-jumping

conviction. The immigration judge rendered an oral decision, denying Ramirez-Cortinas's application for relief and ordered him removed.

## 2. Immigration judge's decision

In a written decision rendered on March 12, 2013, the immigration judge found that Ramirez-Cortinas "is subject to removal because he is in the country illegally and because he has been convicted of a crime involving moral turpitude." The determination "that he has been convicted of a crime involving moral turpitude relates to respondent's failure to adhere to the societal expectations that he would appear as promised for the conduct of his hearing in criminal proceedings." The decision later, however, for the first time mentions that the bail-jumping conviction is considered an aggravated felony and a particularly serious crime. More specifically, the decision states Ramirez-Cortinas's "conviction for bail jumping was failure to appear . . . for a trial related to indecency with a child . . . therefore [Ramirez-Cortinas] *has been convicted of an aggravated felony*, which would make him ineligible for asylum or withholding of removal because the sentence to confinement for seven years make [sic] him convicted of a particularly serious crime as well." The decision concluded that because Ramirez-Cortinas has "been convicted of an aggravated felony, he is ineligible for asylum," and "because his conviction for an aggravated felony resulted in a sentence of confinement of seven years, he would be statutorily ineligible for withholding of removal under the Immigration and Nationality Act" ("the Act"). The immigration judge additionally concluded that "because the [Ramirez-Cortinas] has been convicted of an aggravated felony, that would be bail jumping, where the underlying crimes for which he was bonded for was indecency with a child, which could have resulted in a sentence of confinement in excess of five years, the respondent does not qualify for voluntary departure." The immigration judge's conclusion that Ramirez-Cortinas's bail-jumping

4

conviction constituted an aggravated felony therefore made Ramirez-Cortinas statutorily ineligible for asylum, withholding of removal, or voluntary departure.

### 3. Ramirez-Cortinas's appeal

Ramirez-Cortinas timely appealed to the Board of Immigration Appeals ("the Board"). In his appeal form, Ramirez-Cortinas challenged, *inter alia*, (1) the immigration judge's denial of a continuance; (2) the immigration judge's conclusion that he was ineligible for voluntary departure; (3) the immigration judge's conclusion that he had been convicted of an aggravated felony; (4) that bail jumping qualified as a crime involving moral turpitude; (4) and that bail jumping constituted a particularly serious crime.

On July 24, 2013, the Board denied Ramirez-Cortinas's appeal. The Board stated that Ramirez-Cortinas "has not disputed on appeal that his conviction is for an offense of an aggravated felony" nor did he dispute that the conviction is "a particularly serious crime." The Board concluded that Ramirez-Cortinas's "bail-jumping conviction is for an offense that is both an aggravated felony and a particularly serious crime since it is for an aggravated felony for which he was sentenced to imprisonment exceeding 5 years." The Board also observed that Ramirez-Cortinas "was not charged with removability on an aggravated felony ground" in his notice to appear.

Ramirez-Cortinas came to the attention of federal law-enforcement authorities on May 28, 2018. The charge at issue followed when a grand jury returned an indictment on June 5 2018, for illegal reentry. *See* 8 U.S.C. § 1326(a). The 2013 removal order forms the basis for the instant indictment.

In order to prove illegal reentry, the Government must prove that Ramirez-Cortinas "has been denied admission, excluded, deported, or removed or has departed the United States while

an order of exclusion, deportation, or removal is outstanding." *Id.* The lawfulness or validity of a prior removal order is not an element of an illegal-reentry offense, and the Government need only prove the fact of a prior removal. *United States v. Mendoza-Lopez*, 481 U.S. 828, 834–35 & n.9 (1987). The only statutory defense available to a defendant charged with illegal reentry into the United States is a collateral attack on the defendant's prior removal order. *See* 8 U.S.C. § 1326(d) ("1326(d)").

## II. LEGAL STANDARD

A criminal defendant may allege a defect in an indictment in a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). When the court decides such a motion, it is required to "take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

> The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.

*United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citation omitted).

## III. ANALYSIS

Ramirez-Cortinas's raises a collateral attack under Section 1326(d) on his 2013 removal order. A defendant charged with illegal reentry in violation of Section 1326 has a due-process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. *See Mendoza-Lopez*, 481 U.S. at 837–38. To collaterally

6

attack a prior removal order in an illegal-reentry prosecution, a noncitizen must demonstrate that "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002) (citing *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000)). To show actual prejudice, the noncitizen must show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Lopez-Vasquez*, 227 F.3d at 485 (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999)). "If the alien fails to establish one prong of the three-part test, the court need not consider the others." *United States v. Cordova–Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (quoting *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003)).

The Fifth Circuit regards the test as "effectively codified" in Section 1326(d). *Benitez–Villafuerte*, 186 F.3d at 658 n.8.

Section 1326(d) provides:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that–

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Section 1326(d) is categorical: it states that a noncitizen "may not challenge the validity of the deportation order . . . unless" he can satisfy the requirements of subsection d. Further,

7

Section 1326(a) prosecution is not limited to those cases in which the underlying removal was "lawful." *See Mendoza-Lopez*, 481 U.S. at 834–35 (considering whether Section 1326 permits challenge to lawfulness of underlying removal order, holding "the language of the [Section 1326] suggests no such limitation"). Thus, Ramirez-Cortinas must satisfy all three requirements of Section 1326(d).

Ramirez-Cortinas argues that his removal hearing was fundamentally unfair because the immigration judge erroneously concluded that his bail-jumping conviction qualified as an aggravated felony, which deprived him of the opportunity to have his applications for asylum, withholding of removal, and voluntary departure considered by the immigration judge on the merits. Ramirez-Cortinas contends that this error was compounded by the fact that the Notice to Appear contained no notice that he would be classified as an aggravated felon. Ramirez-Cortinas additionally claims that a myriad of other procedural-due-process violations resulted in a fundamentally unfair proceeding, including a lack of advisement about free-legal-service providers, lack of discovery fundamental to his asylum claims, and the immigration judge's determination to deport Ramirez-Cortinas before considering any of the evidence.

Following a review of the record, the court concludes that Ramirez-Cortinas satisfies the requirements of Section 1326(d). Specifically, the court finds that (1) Ramirez-Cortinas exhausted his administrative remedies;[1] (2) Ramirez-Cortinas was deprived of meaningful judicial review; (3) aspects of the removal proceeding rendered the process fundamentally unfair; and (4) Ramirez-Cortinas suffered actual prejudice.

---

[1] Ramirez-Cortinas appealed the order of the immigration judge to the Board, and the Government does not contest that Ramirez-Cortinas exhausted his administrative remedies. This court agrees and finds Ramirez-Cortinas exhausted his administrative remedies as required by Section 1326(d)(1).

8

### 1. Opportunity for judicial review

"Where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Mendoza-Lopez*, 481 U.S. at 837–38 (emphasis in original). A criminal defendant must show that procedural errors "effectively eliminate[d] the right of the alien to obtain judicial review." *Id.* at 839.

The court concludes that several aspects of the hearing and the Board's decision deprived Ramirez-Cortinas of meaningful judicial review of his claims. For one, the Board mistakenly concluded that Ramirez-Cortinas did "not dispute on appeal that his conviction is for an offense that is an aggravated felony and also a particularly serious crime." In his notice of appeal, Ramirez-Cortinas explicitly listed, in part, as reasons for his appeal "that I was convicted of an aggravated felony" and "that I was convicted of a particularly serious crime." Ramirez-Cortinas cannot be said to have meaningful review of his aggravated-felony categorization, when the Board assumed that he did not seek review of that categorization, and did not undertake any analysis of such. To put it plainly, review is not meaningful when a reviewing body does not review those issues raised on appeal. To compound the error, the Board relied on an entirely different aggravated-felony subchapter than was relied on by the immigration judge, with no explanation as to the difference.[2] As such, the court concludes that Ramirez-Cortinas meets his burden in showing he was deprived of judicial review as required by Section 1326(d)(2).

### 2. Fundamental unfairness

Ramirez-Cortinas must also show that the entry of his removal order was "fundamentally unfair." 8 U.S.C. § 1326(d)(3). "Fundamental fairness is a question of procedure." *Lopez-Ortiz*,

---

[2] More specifically, the immigration judge classified Ramirez-Cortinas's prior conviction as an aggravated felony by relying on subchapter Q. *See* 8 U.S.C. § 1101(a)(43)(Q). The Board's decision relied on subchapter T. *See id.* at § 1101(a)(43)(T).

313 F.3d at 230. Because removal proceedings are civil rather than criminal in nature, "procedural protections afforded to an alien in removal proceedings are less stringent than those available to a criminal defendant." *Id.* For removal hearings, "due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953)). In addition, Ramirez-Cortinas must show "actual prejudice," that is, despite fundamental unfairness or errors in the law, "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Lopez-Vasquez*, 227 F.3d at 485 (quoting *Benitez-Villafuerte*, 186 F.3d at 658–59).

This court concludes Ramirez-Cortinas has successfully shown the fundamental unfairness of the removal proceedings that resulted in his removal. First, the Board's facially incorrect assertion that Ramirez-Cortinas did not "dispute that his conviction is for an offense that is an aggravated felony," was also fundamentally unfair because it denied Ramirez-Cortinas a "fair opportunity to be heard," on appeal, thus rendering his removal proceedings "fundamentally unfair." *See* 8 U.S.C. § 1326(d)(3); *Lopez-Ortiz*, 313 F.3d at 230; *Kwong Hai Chew*, 344 U.S. at 597–98. In addition, and as explained below, the court concludes that the hearing was fundamentally unfair because the Ramirez-Cortinas was denied the opportunity to be considered for relief from deportation based on the immigration judge and the Board's misapplication of the law.[3]

### 3. Prejudice

Ramirez-Cortinas contends that the immigration judge and Board incorrectly concluded that bail jumping qualifies as an "aggravated felony" under the Act, and refused to consider his

---

[3] In light of the court's finding of fundamental unfairness, the court finds it unnecessary to address Ramirez-Cortinas's remaining claims of fundamental unfairness.

10

applications for asylum, withholding of removal, and voluntary departure on the merits. Ramirez-Cortinas asserts prejudice because the immigration judge's erroneous conclusion about the aggravated felony truncated his "opportunity to exercise his right to the extent allowed by law." He further submits that, had the immigration judge considered his application for asylum and withholding of removal on the merits, there is a reasonable likelihood that those applications would have been granted, and he would have not been deported.

Ordinarily, when a noncitizen is found to be deportable for being in the country illegally, "he may ask the Attorney General for certain forms of discretionary relief from removal" available under the Act. These forms of relief include, in part, asylum, withholding of removal, and voluntary departure. *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013). "But if a noncitizen has been convicted of one of a narrower set of crimes classified as 'aggravated felonies,' then he is not only deportable, [Section] 1227(a)(2)(A)(iii), but also ineligible for these discretionary forms of relief." *Id.* (citing 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); §§ 1229b(a)(3), (b)(1)(C)).[4] Pertinent here, the Act includes within it the definition of an aggravated felony:

> (Q) an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more . . .
> (T) an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed;

8 U.S.C. § 1101(a)(43) (subchapters Q and T) . Although the immigration judge did not cite to a specific provision of the Act in the written decision, at the hearing, the judge indicated that

---

[4] The Government argues that Ramirez-Cortinas was still removable because he was charged with being in the country illegally, a charge which he did not contest. It also argues that Ramirez-Cortinas's previous criminal convictions also rendered him removable in the first instance. These arguments miss the point. The Act provides defendants like Ramirez-Cortinas with the right to seek affirmative relief from deportation, despite being present in the country illegally and removable in the first instance. Ramirez-Cortinas sought three such forms of relief: asylum, withholding of removal, and voluntary departure. The issue here is whether Ramirez-Cortinas was improperly deprived due consideration of the discretionary relief he sought.

11

Ramirez-Cortinas's bail-jumping offense under Texas Penal Code Section 38.10 qualified as an aggravated felony under subchapter Q. The Board also determined that Ramirez-Cortinas's "bail-jumping conviction is for an offense that is [] an aggravated felony" under subchapter T.

This court must determine whether Ramirez-Cortinas's bail-jumping conviction is properly categorized as an aggravated felony. The parties disagree on what test should be applied to determine whether bail jumping is an aggravated felony. Ramirez-Cortinas contends that this court should apply a "categorical approach," whereas the Government contends that this court should apply a "blended categorical and circumstantial approach." *See Matter of Garza-Olivares*, 26 I. & N. Dec. 736 (BIA May 5, 2016).

In deciding between a categorical and blended categorical and circumstantial approach, the first step is to determine whether subchapters Q or T define a generic crime or a circumstance-specific crime. *Nijhawan v. Holder*, 557 U.S. 29, 38 (2009). "When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the [Act], we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the [Act]." *Moncrieffe*, 569 U.S. at 190–91 (internal quotations omitted). However, the categorical approach is inapplicable when the predicate aggregated-felony offense under the Act calls for an examination of the "particular circumstances in which an offender committed the crime on a particular occasion." *Nijhawan v. Holder*, 557 U.S. at 38. If the provision in the Act contains specific-circumstance elements, a blended categorical and circumstantial approach is appropriate, in which the court categorically compares the generic elements of the Act to the generic elements of the state offense, and then looks to the specific conviction to determine whether it meets the circumstance-specific elements found in the Act. *See Moncrieffe*, 569 U.S. at 190–91 ("[A] state offense is a categorical match

12

with a generic federal offense only if a conviction of the state offense necessarily involved . . . facts equating to [the] generic [federal offense]."); *see also Matter of Garza-Olivares*, 26 I. & N. Dec. at 740–41.

The Fifth Circuit has not determined whether subchapters Q and T describe a generic crime or circumstance-specific crime. But the court need not resolve that issue. Regardless of whether subchapters Q and T are generic or specific, the result is the same: neither section is a generic categorical match with Texas Penal Code Section 38.10. As such, the court need not examine the circumstance-specific elements of the statutes.

The court first starts with a comparison of subchapter T, which was relied upon by the Board, with the Texas bail-jumping statute. *See* TEX. PENAL CODE ANN. § 38.10. Subchapter T of the Act requires (1) a "failure to appear" (2) "before a court" (3) "pursuant to a court order" (4) "to answer to or dispose of a charge of a felony" (5) "for which a sentence of 2 years' imprisonment or more may be imposed." 8 U.S.C. § 1101(a)(43)(T). Under Section 38.10, "a person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release." TEX. PENAL CODE ANN. § 38.10(a). Upon review, the court concludes the generic elements of Subchapter T, "failure to appear before a court," are not a categorical match with the generic elements of Section 38.10. The generic elements of Section 38.10, "intentionally or knowingly fails to appear in accordance with the terms of his release," are not a generic match because they do not require that the appearance be *before a court*, as subchapter T requires. *See, e.g., Timmins v. State*, 560 S.W.3d 671, 680 (Tex. App.—San Antonio 2018), *petition for discretionary review granted* (Nov. 21, 2018) (construing "the term 'appear' in Section 38.10 as *including places, other than a courtroom,* where a defendant may be required

to report or be physically present as required by the conditions of the defendant's release from custody") (emphasis added). For the same reason, Subchapter Q is also not a generic match with Section 38.10, as Subchapter Q requires "failure to appear by a defendant for service of a sentence," when Section 38.10 does not require the failure to appear to be for service of a sentence. In sum, a comparison of the generic elements of Section 38.10 with the generic elements of failure to appear under Subchapters T and Q demonstrates that the Texas Penal Code Section 38.10 does not qualify as predicate aggravated-felony offense under the Act.

The immigration judge, however, concluded that because Ramirez-Cortinas has "been convicted of an aggravated felony, he is ineligible for asylum," and "because of his conviction for an aggravated felony resulted in a sentence of confinement of seven years, he would be statutorily ineligible for withholding of removal." The immigration judge additionally concluded that his aggravated felony would preclude him from voluntarily departing.[5] Because the immigration judge concluded that Ramirez-Cortinas's bail-jumping conviction constituted an aggravated felony, he therefore determined that Ramirez-Cortinas was ineligible for asylum, withholding of removal, and voluntary departure. This actually prejudiced Ramirez-Cortinas because he sought two types of relief from deportation—asylum and withholding of removal—that were not considered by the immigration judge, and which might have prevented his ultimate deportation.

IV. CONCLUSION

Having concluded that Ramirez-Cortinas satisfies all three prongs necessary for a collateral attack of a deportation order under Section 1326(d),

---

[5] However, the immigration judge noted that had Ramirez-Cortinas been eligible for voluntary departure, "the [c]ourt would have denied voluntary departure as a matter of discretion." This court accordingly does not consider the denial of Ramirez-Cortinas's application for voluntary departure as prejudicial.

14

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Indictment filed September 11, 2018 (Dkt. No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that the indictment against Ramirez-Cortinas is **DISMISSED.**

In light of the above, the court need not and does not consider Ramirez-Cortinas's other grounds for dismissal, and

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Indictment on Independent Grounds due to Defective Notice to Appear filed October 19, 2018 (Dkt. No. 25) is **DISMISSED.**

SIGNED this 29th day of January, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE